Okay, our last case this morning is number 21-13789 Royal Palm Village Residents, Inc. v. Monica Slider, et al. And Ms. Whiting-Bosich, did I get the last name right? Yes, you did, Your Honor. Okay, go right ahead. Good morning. May it please the Court. Counsel on behalf of the appellants, Monica Slider, et al. We have a very focused issue before the Court today. It's a matter of statutory interpretation. And what we're here today is to resolve what does a proceeding to enforce mean within the context of a foreign mobile home statute. First, as it relates to statutory instruction, we look at the plain meaning of the word. In this particular instance, the legislature used broader language. They did not use language as an action brought under this section, as sometimes you'll see. Instead, they used any proceeding to enforce. Ms. Whiting-Bosich, let me ask you a question and tell you the concern I have or the issues I have with your side of the case. I take your position that the language can be read one of two ways, broadly or narrowly. But we have one opinion from a Florida intermediate appellate court, which cuts against your reading of the statute. And that's the T&W case from Florida's 50 CA in 2010. Why isn't that the tiebreaker against you? And so I will respectfully disagree with the analysis as it relates to the DW development case, and here's why. If you really look at what facts of that particular case were. So in that particular case, you were dealing with a couple who had purchased the mobile home. And what they had done with respect to the homeowners association is they believed that the deed restrictions violated federal law, anti-discrimination law. And so they went to the Florida Mobile Home Association and they asked them to change, take a look at those deed restrictions so that it didn't violate the anti-discrimination statute. And at the end of the day, there was also an ancillary issue as to whether or not they, and to what extent they had to provide cable services. When they were dealing with, so the court said two things, right, there were three counts, the second count and the third count related to 723. And in response to the second count, what the court said was, however, the specific allegations of the count, when coupled with the argument proffered at the summary judgment hearing, indicates that the ultimate relief requested was an invalidation of the amendments. And what they're talking about is the amendment to the deed restrictions. So this was a matter of interpretation of the deed restriction, not necessarily any of the provisions of the Florida Mobile Home Act. And the court goes on to say, because it destroyed Hollywood Estates general plan of development and disregarded the intent of the deed restrictions by empowering the homeowners association, instead of the authority, based on the age restricted character. So wasn't going to the transfer of the lots, wasn't going to lot rental changes for count two. And again, as it related to count three, what the court says that you have to look at the true nature of the relief requested. And so our position, and we set it out in our brief, is that the reason that actually TW supports our case because when you actually get in and dive into the actual specific allegations of what the, the affilies were arguing in the underlying case, they were seeking to enforce substantively, right, not procedurally but substantively, the Florida Mobile Home Act, and some examples of that. If you take a look, and you compare the three complaints. The first complaint. There are nine different specific allegations that are incorporated into all the counts, with the exception of ADA violations of the Florida Mobile Home Act. When you get into the amended complaint, there are still forming the basis of each and every Rico claim violations offer to purchase the park was unsolicited, that's a specific violation of 7.3071. Can I ask you, can I ask you a quick, this is Judge Newsome, can I ask you a quick question sort of pivoting off of T&W, I don't think I disagree with you that I think on balance T&W may support you more than it hurts you. I guess my question is, what do we do, you started your argument by saying this is a statutory interpretation case in the Florida Supreme Court has made clear that we, you know, it's had this and I'm not I didn't coin this term one of my law clerks gave it to me this turn to textualism and 2020 and the advisory opinion of the justices they say like, from here on out, here's how we're going to do statutory interpretation right. And so, for this piece of your argument the key term is in force. And here's the difficulty I have with enforcing the FMH a. This is principally a Rico claim. Right. And the, the, the predicate act for the Rico claim is mail and wire fraud. And the predicate to the predicate, if you will, is ultimately a violation of the FMH a. But, so this is clearly an action to enforce Rico. Now it might also be an action to enforce something else but it's clearly an action to enforce Rico. But once you get to step two. Can you say that this is an action to enforce the mail and wire fraud statutes, which are federal criminal statutes. And if it if the if the enforcement breaks down at level two, how can it then possibly be in an action to enforce at level three, the FMH a, I just don't quite understand that setting aside. And so it is so they're trying to enforce I would say both mail wire fraud but again let me take you but hold on wait wait wait but so so before we get too far. How can they enforce mail and wire fraud, those are federal criminal statutes the executive branch of the United States enforces those statutes. Right, so what they're trying to well see, and that's because really what personally what they're trying to do is they use mail wire fraud as a basis but quite frankly if you ask me I think they're trying they were trying to back door in FMH a through through reported Rico violations that they were never going to be able to establish for the reason that you said, but, but let me switch you to the remedy says I was trying to set it up right now let me let me switch you to the remedy because I think it becomes clear that they're trying to enforce that the major remedies they're seeking. So for instance, I cited to in my brief for the district court, and let me back out so the district court says, look at the relief, they're excited to the Rico statute. But she leaves out at the very end of each of the complaints, medical plan the second minute complaint generally really sought as to all counts, and they've asked for injunctive relief and they've asked for equitable. Right, there is the courts have said there's really no injunctive relief under Rico action between private parties. So let's start there. But more than that, if you take a look at the Second Amendment complaint and paragraph 50. They plan that they fraudulently imposed or change lot rental categories, and they were forced to pay higher lot rental pay an illegal home prep fee on a resale home and purchase in violation of 72303 subsection three, and suffered significant reduction in the use, access or enjoyment of the park in their home. And again in paragraph 53 of the Second Amendment complaint they say the pattern of racketeering activity or criminal activity consisted of, but was not limited to. Right, and then they say, describing paragraphs 42 through 51 and you go back and look at paragraphs 42 through 51. Those are all FM a J violation. And again, they do that. Something similar in paragraphs 55 to six. But then when you get to paragraph 58. They asked the court, and this is important to reverse or refund money. And to the extent they pay for services for which they received no benefit. They want money damages for that. Now why is that important because if you actually take a look at FM a J 720 3033 of FM a J allows a court to award a refund or reduction in future rent payments, and specifically when they refer to. But wouldn't wouldn't Rico allow you to get that same relief. For, but they're not asking for that for the wire fraud they're asking that specifically in relationship to the monies that they that they pay because it was respect to Rico they're alleging the mail and wire fraud, but it's the other actions that asking for this type of relief and so when you look at the specific relief that they're asking for as they go throughout, they're asking to be reimbursed for those charges which is explicitly authorized under the FM a J. Can I can I ask you a separate question and redirect you and I'm going to go ahead and confess that I think I'm going to carry you beyond your allotted time but as Judge Jordan would say it's you're on my time not yours so don't sweat it. Are you sure that you're a prevailing party, sort of switching issues a bit Are you sure that you're a prevailing party. I mean, I presume that you, you agree under federal law if federal law applies you're not right Buckhannon sort of skewers you on federal law, so you need to be traveling under state law and I'm not convinced that you're wrong I think you might be right, frankly, that that state law applies. But are you convinced that you're a prevailing party even under Florida law for voluntary dismissal without prejudice, and if so on what basis. Um, yes, I mean that was that issue was briefed significantly in the underlying but you know the case well the case with respect to that issue, what we cited in this brief is earth cam I mean the case law in Florida, is that a voluntary dismissal without prejudice you're still the prevailing party and I'm sorry I have to go back and look at my notes to find those that wanted cases for you but no no no I'm not I promise I'm not trying to pay play quiz show and so I think the case that you may be referring to is this case called alhambra homeowners association, which is a DCA case that does certainly indicate that. But I guess I had saying that I had about enforcement, which is what do we do with the Florida Supreme Court's announcement in this advisory opinion that now it is like a rigorously textual court. And it seems to me that prevailing party is, you know, a term of art, that means something in particular, and all of the indications that I can find from the Florida Supreme Court is that it would likely disagree with that alhambra case. And you know we have to look for persuasive indications that the Florida Supreme Court might do something different we can't just wet ourselves to what the DCA has done we've got to decide if we think the Florida Supreme Court would do something different. And I guess just speaking for myself. I'm sort of convinced that it would that it would conclude that a voluntary dismissal without prejudice does not make one a prevailing party and thereby align itself with everybody else who seems to have come to that conclusion. Why am I wrong about that. That's a great question. And as I'm sitting here pondering, you know, I think, you know, the history of the case law in the state of Florida for years and not just the second DCA but the third, the fourth, the fifth, they've always treated a voluntary dismissal as an abandonment of a claim. And so in that regard, even if this without prejudice, you know, it has always been deemed an abandonment of a claim that makes someone a prevailing party. I guess what I'm thinking is, just so I'm not you don't think I'm trying to play hide the ball which I promise I'm not. There's this case from the Supreme, the Florida Supreme Court called Thornburg, which says that to be a prevailing party one there must be some end to the litigation on the merits. Okay. I don't think a voluntary dismissal without prejudice in the litigation on the merits at all.  Right. I mean, I'm yeah I would agree with that. I'll concede on that point. And then you know the Florida Supreme Court has also said that to be a prevailing party there. Typically there's a judgment. You know, a final judgment. And I don't know that a voluntary dismissal without prejudice gives rise to any judgment at all. I just wonder, I mean I'm just sort of thinking out loud here but I just wonder whether everybody in the litigation perhaps has been too quick to assume that whatever the DCA said in Alhambra and cases that sort of look like it go. And that if we're not scratching hard enough to see what in fact the Florida Supreme Court has strongly indicated to us it would hold if the issue were put before it. I don't necessarily disagree with that. It's, you know, you're probably right because the case law in the state of Florida and multiple jurisdictions throughout the state of always held that an involuntary dismissal and so we as practitioners. You know, it's one district we follow that district it's multiple districts then even better for us. So, I can't speak to what the Florida Supreme Court may or may not do or indicated it'll do. Okay, very well. Thank you very much and Judge Jordan thanks for letting me. Thanks for indulging me. Of course, no problem at all. Right. Miss whiting boss that you saved your full time for rebuttal. Miss was like very much Your Honor may please the court, Denise was like for our Pelley's Royal Palm Village Residence Association. And I think that that judge Jordan your first question really hit the nail on the head as far as whether you know the question is really whether you should interpret the statute broadly. The answer to my take is not just as T&W a tiebreaker, but also as a tiebreaker is all of the case law that talks about statutes and derogation of the common law awarding attorneys fees are to be construed narrowly that is the case in. In all of the federal common law and also in the state common law, and here, because this is a awarding attorneys fees and derogation of the American rule, we do have to read, read the statute narrowly. And as soon as Newsome pointed out, you know, the, the, the predicate acts are not violations of the statute, the predicate acts are violations of mail fraud and wire fraud. And so, to say that this is a proceeding to enforce the, the underlying state statute is too much of a stretch, particularly given the constraints of statutory interpretation that we're dealing with here. And then, secondarily, also, I also agree with Judge Newsome that the prevailing party analysis is not as clear cut as the as I think the trial court treated it and and as it as in general, it should be. Because, you know, even if you agree with some of the state courts that say a dismissal without prejudice makes you a prevailing party. In this case, we're in federal court, and I would, I would suggest that because of that we have to follow the federal court. The federal procedural analysis of what constitutes a prevailing party, and I would, I would point the court I cited to to admittedly district court cases, one in the Southern District of Florida produce pay Inc versus agro sale and one in Puerto Rico. The, the, the, sorry, the. But and one in Puerto Rico, the Davidson versus Puerto Rico Firefighters Corps, both of those kind of look at the situation of should there be attorneys fees awarded under a state statute and determines that because there is no prevailing party under the federal rule under McCann and as you guys, as you already mentioned that, that, that there should not be an award of attorneys fees in this situation under the state rule. So let me ask you this so do you have the choice of law question I mean do you deny that we've got this case McMahon versus total that says that statutes allowing for recovery of attorneys fees are substantive for eerie purposes, like why would I think that the statute itself is substantive, but I think that the underlying decision of how you determine what is a prevailing party is not substantive I think that's a procedural decision, it doesn't make sense to me that it could be one way for for costs and another way for for the underlying individual statutory attorneys fees provision. So, and again, even if, even if they were the prevailing party which I do not think they are because we have this voluntary dismissal without prejudice. We still have to contend with the actual language of the statute, and the fact that we have an on point Florida intermediate appellate court that states that simply invoking chapter 723 is not sufficient to confer entitlement attorneys fees under 723 oh six, eight, because that's not necessarily a proceeding to enforce. And I think, ultimately, the, the trial court here did properly analyze what a proceeding to enforce is. And then, as far as the rest of it is concerned interpreted interpreted statute correctly, and then also acted well his discretion and determining, you know, where to I think I've addressed everything you said you asked this, this, my opposing counsel so you tell me if there's anything else you want me to address. I have one question that was partly due to your response to judge Newsom's question. Okay, so you think that you can splice out who the prevailing party is from whether or not you get attorneys fees as a substantive matter. In terms of the eerie dichotomy. Yes, I think that is correct because, you know, following the logic that was set out in the produce pay case and also the Davidson firefighters case. There is the overall federal common law analysis of, we do not really like awarding attorneys fees, unless there is a federal statute saying so, and we're not going to find a prevailing party in those situations, even if there is a state statute that says so, because overall you're not prevailing as far as the federal court is concerned. So I would, I would argue that that logic is is sound in this situation. What if the state law didn't have prevailing party language. Um, then it would really depend that then we wouldn't have to be looking at what federal law says about prevailing party either. So, I mean, I think the issue is that prevailing party is a very settled. Meaning, under a canon and under federal law as far as costs and also in general, when looking at at a statute, but here we have language that is settled under federal law and we have to apply that federal analysis. Okay. All right. Thank you very much. Okay, thank you all right you've got your full time for rebuttal is waiting passage. Thank you. So I'll start with the last argument as it relates to splicing out a nervy eerie doctor that I'm going to disagree with my colleague, Miss was like, and, you know, as I indicated in the reply brief if you take a look at the actual facts of the Davidson Puerto Rico case. That case was originally premise on a federal question, and the 11th Circuit explicitly indicated that it was primarily premise on a federal question case, and that if there were significant state issues. The analysis would be different. And that takes us to the earth can face which is more analogous to what we have here which is in the earth can face there was an offer of compromise statute at play. In the federal case just like we had the Florida Mobile Home Act statute at play in this case, even in the original complaint, it was an explicit standalone claim. And if you follow the rationale of earth can it is a substantive issue and the prevailing parties is determined by the state law which in this case was the FM AJ statute to address our second point which you'll be strictly construing a statute. Yes, you can strictly construe statutes and again as I indicated in the reply rate. You don't strictly construe the statute to make the language, reverse. And so again, I want to beat a dead horse, but, and I understand your honors various questions, but when the language itself is broader than the, the manifest intent of the legislature is to have a broader, broader applicability as it relates to getting prevailing party fees. Just a quick question just to circle back my prevailing party questions. If we're, if we're put to a choice between, for instance, the Alhambra decision, and other more recent decisions of the DC is that seem to indicate that a voluntary dismissal without prejudice gives rise to prevailing party status. And what we think is a more faithful interpretation of this term of our prevailing party by reference to, you know, as the Florida Supreme Court instructed us dictionaries circa 1984, you a federal and state cases circa 1984 when this statute was adopted. That indicate that a voluntary dismissal without prejudice does not give rise to prevailing party status which should we choose. And lesson until the, the Florida Supreme Court explicitly states in an opinion that the law of the land is going to be prevailing party does not include voluntary dismissals without prejudice. I believe that is appropriate for this court to follow the numerous DCAs in Florida, who have indicated over a number of years that a voluntary dismissal without prejudice gives rise to prevailing party fees. So what about our own precedent 11th Circuit precedent that says that we should, as you say, look to intermediate Court of Appeals decisions in the various states, Alabama, Georgia, Florida, unless there are persuasive indications that the state Supreme Court would do otherwise. And why, why isn't the combination of the Florida Supreme Court's announcement recently. Hey, we've been doing statutory interpretation the wrong way, we really think that plain meaning is the way to go yada yada yada. Why isn't that a persuasive indication that we ought to really buckle down and figure out what prevailing party meant in 1984. By reference to dictionaries again as the Florida Supreme Court said an existing case law at that time because all of these DCAs that you cite post date. This, the enactment of this statute. So if we're trying to figure out what the what the Florida legislature, you know, sort of what the original, you know, sort of understanding was in 1984. Then I actually think the record looks a little different, a lot different actually. So my, my, what I would say to you is, I understand that some of the decisions that we say to our post 1984. However, and I'd have to go back and look at some of the case law. A lot of it deals with breach of contract you know a lot of a lot of the cases come out of mortgage foreclosures as well. I'd have to go back and look at how far back. Those particular opinions reach. In other words, you know, they may be today but they may be analyzing issues or statutes that go back before the data of the actual opinion being issued. And what I would say is, I guess persuasive what what you know what this court deems persuasive. I don't necessarily think that a Florida Supreme Court, indicating that maybe one day, it'll do this is persuasive I think perhaps an actual explicit opinion even if it's dicta might be deemed persuasive but an advisory we might do this because now we're a textual sport. It's not persuasive enough. Very well, thank you so much. Judge Jordan you're muted. Thank you both very much. We appreciate the assistance. That constitutes the end of our session for today and we will be in recess until tomorrow morning at night. Thank you very much for your time stay safe. Thank you everyone.